UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:09CV-102-JHM**

**G.C. III, et al.**                                                                                                         **PLAINTIFFS**

vs.

**OWENSBORO PUBLIC SCHOOLS, et al.**                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiff, G.C. III, by and through his parents, G.C. II and B.C., for a preliminary injunction [DN 6].[1]  This case challenges the removal of a nonresident student from Owensboro Public Schools by the Superintendent without a formal hearing in front of the Board of Education. On November 13, 2009, the Court held a hearing on this matter. For the reasons set forth below, Plaintiff's motion for a preliminary injunction is denied.

**I. Background**

Plaintiff, G.C. III, resides in Daviess County in the Daviess County Public School District. Since at least 2005, Plaintiff, G.C. III, attended school in the Owensboro Public School District as a nonresident student pursuant to Owensboro Board of Education Policy 09.125.  This policy provides that "[t]he continued enrollment of nonresident students in the District's schools is subject to the recommendation of the school Principal and the approval of the Superintendent." (Larry Vick Affidavit, Exhibit A.) At the end of the 2008-2009 school year, Owensboro High School principal, Anita Burnette, recommended that G.C. III be returned to the Daviess County Public School District because of his multiple disciplinary infractions. (Id. at ¶ 10.) On June 15, 2009, Owensboro Public

---

[1]The Plaintiff actually submitted a motion for a temporary restraining order. However, since notice has been given to the Defendants, the Court has considered this as a motion for a preliminary injunction.

School District Superintendent, Larry Vick, held a meeting with G.C. III's parents and several school officials to discuss the student's options for attending school the next year. (Id. at ¶ 11.) Despite the recommendation of Burnette, Superintendent Vick advised the parents that G.C. III could attend Owensboro High School as a nonresident student provided that G.C. III did not commit any further disciplinary infraction. (Id. at ¶ 11.)

On September 2, 2009, Owensboro High School administrators determined that G.C. III violated the District's cell phone policy. (Vick Affidavit at ¶¶ 14-15.) Following the infraction, Burnette recommended that G.C. III be returned to the Daviess County Public School District where he resided. Vick concurred with the recommendation and requested the Director of Pupil Personnel, David Johnson, to inform G.C. III's parents of the decision. Johnson then notified Daviess County School District that G.C. III would be returned to his home school district. On October 15, 2009, Plaintiffs met with Superintendent Vick and requested that the student be permitted to return to Owensboro High School. The request was denied. G.C. III did not receive a hearing before the Board of Education prior to his removal from the school.

On October 21, 2009, Plaintiff, G.C, III, by and through his parents, filed a complaint for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 alleging that the Defendants, Owensboro Public Schools, Superintendent Larry Vick, Principal Anita Burnette, Assistant Principal Melissa Brown, and Assistant Principal Christina Smith, violated his rights under the First Amendment, Fourth Amendment, and Fifth Amendment to the United States Constitution and Article II of the Kentucky Constitution. Specifically, Plaintiff alleges that the Defendants violated his rights under the First Amendment by their unauthorized reading of Plaintiff's text messages, violated his rights under the Fourth Amendment by wrongfully searching Plaintiff's cell phone

without his consent or without reasonable suspicion, and violated his due process rights under the Fifth Amendment by suspending and/or expelling him from school without the required process provided by KRS § 158.150.

On October 31, 2009, Plaintiffs filed this motion for a temporary restraining order and injunctive relief restraining the Defendant from denying the Plaintiff his right to an education and the privileges of any student enrolled at Owensboro Public Schools.

## II. Preliminary Injunction Standard

A preliminary injunction is an extraordinary remedy that is used to preserve the status quo between the parties pending a final determination of the merits of the action. In determining whether to issue a preliminary injunction, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (citing Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)). These four factors are "to be balanced and [are] not prerequisites that must be satisfied." Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 859 (6th Cir. 1992) (citation omitted). Furthermore, these factors are to "guide the discretion of the court" and "are not meant to be rigid and unbending requirements." Id. (citation omitted). A party is not required to prove its case in full at the preliminary injunction stage. Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir. 1997) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390 (1981)). Therefore, the findings of fact and conclusions of law of a district court are not binding at

a trial on the merits. Id. Generally, the "district court [is] to make specific findings concerning each of these four factors, unless fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (citing United States v. Sch. Dist. of Ferndale, 577 F.2d 1339, 1352 (6th Cir. 1978)).

### III. Discussion

#### A. Likelihood of Success on the Merits

The Court must first consider whether the Plaintiffs have "demonstrated a strong likelihood of success on the merits." Tenke, 511 F.3d at 543. G.C. III contends that the Owensboro Public School District removed him from Owensboro High School without due process of law in violation of the Fifth Amendment. Initially, the Court notes that the Due Process Clause of the Fifth Amendment restricts only the actions of the federal government, while the Fourteenth Amendment's Due Process Clause restricts the actions of the states and their instrumentalities. Palmer v. Town of Jonesborough, 2009 WL 1255780, *8 (E.D. Tenn. May 1, 2009)(citing Pub. Utils. Comm'n of D.C. v. Pollak, 343 U.S. 451, 461(1952); Bybee v. City of Paducah, 46 Fed. App'x 735, 737 (6th Cir. 2002); Scott v. Clay County, Tenn., 205 F.3d 867, 873 n. 8 (6th Cir. 2000)). Thus, the Court will analyze Plaintiffs' Due Process claim under the Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. U.S. Const. amend XIV, § 1. "The Fourteenth Amendment's guarantee of procedural due process assures that the deprivation of life, liberty, or property will not be effectuated without 'notice and opportunity for hearing appropriate to the nature of the case.'" Barachkov v. 41B Dist. Court, 311 Fed. Appx. 863, *7 (6th Cir. February 20, 2009)(quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation omitted)).

4

When faced with a claim for violation of due process rights, the Court engages in a two-step analysis. "First, the interest at stake must be a protected liberty or property interest under the Fourteenth Amendment. If such an interest exists, the court must then consider whether 'the deprivation of that interest contravened the notions of due process.'" American Exp. Travel Related Services Co., Inc. v. Hollenbach, 630 F. Supp. 2d 757, 760 (E.D. Ky. 2009)(quoting Wojcik v. City of Romulus, 257 F.3d 600, 609 (6th Cir. 2001)).

In order to establish a property interest in an education in the Owensboro Public School District, G.C. III must demonstrate that he has a "legitimate claim of entitlement" to an education in the district. Goss v. Lopez, 419 U.S. 565 (1975); Daniels v. Woodside, 396 F.3d 730, 737 (6th Cir. 2005). Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" Daniels, 396 F.3d at 736 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

After a review of the case law and the parties' arguments, the Court finds that G.C. III has no constitutionally cognizable property interest in attending school in the Owensboro Public School District. While Kentucky law clearly provides a property interest in a free public education, see Goss v. Lopez, 419 U.S. 565 (1975); Laney v. Farley, 501 F.3d 577, 581 (6th Cir. 2007), this property interest extends to only those students that reside within a school district. See KRS § 159.010. G.C. III is not a resident student of the Owensboro Public School District. Under Goss and Kentucky law, G.C. III's property interest in his education rests with the school district in which he resides.

Similarly, Owensboro Board of Education Policy 09.125 does not provide a property interest

in his continued enrollment in the Owensboro Public School District. Kentucky law grants each local board of education the discretion to permit nonresident children to attend school in the district. See KRS § 158.120; KRS § 157.350. Pursuant to this authority, the Owensboro Public School District adopted a policy permitting nonresident students to enroll in the District's schools at the discretion of the Superintendent or his designee. Importantly, the continued enrollment of nonresident students in the School District is subject to the recommendation of the school principal and the approval of the Superintendent. (Owensboro Board of Education Policy 09.125.) G.C. III cannot demonstrate any legitimate entitlement to continued enrollment in the School District pursuant to this policy. Because G.C. III attended Owensboro High School at the unfettered discretion of the Superintendent and because he does not reside in that School District, G.C. III does not have a property interest in an education within the Owensboro Public School District.

This decision is supported by the Sixth Circuit's decision in Daniels v. Woodside, 396 F.3d 730 (6th Cir. 2005). In Daniels, the Anchor Bay School District established Skill Quest, an alternative high school program available to students who met certain eligibility criteria. Admission to the Skill Quest program was discretionary with the superintendent. Further, in order to remain in the program students were required to adhere to the school's attendance and behavioral rules. Daniels, a student in the alternative school, violated the school rules and was removed from the program. Daniels sued Anchor Bay School District and the superintendent alleging that the defendants deprived him of due process by terminating his participation in the Skill Quest program without affording him a hearing. In addressing Daniels' due process claim, the Sixth Circuit held in relevant part:

> In order to establish a property interest in participating in the Skill Quest program, Daniels must demonstrate that he has a "legitimate claim of entitlement" to that

> participation. Goss, 419 U.S. at 573, 95 S.Ct. 729; LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097, 1108 (6th Cir. 1995). Daniels cannot demonstrate any such entitlement because participation in the Skill Quest program is entirely at the discretion of the superintendent, and continues only so long as the participant abides by the program's rules and policies. Daniels therefore has no property right in the alternative education he sought. . . . Because Daniels cannot demonstrate any property right to alternative education in the Skill Quest program, he cannot demonstrate that Anchor Bay or [the superintendent] denied him due process by enforcing the program's automatic loss of credit resulting from his absence from class . . . .

Daniels, 396 F.3d at 737. See also Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1359 (6th Cir. 1996); Mullen v. Thompson, 31 Fed. Appx. 77 (3d Cir. 2002)("Plaintiffs have no constitutionally cognizable property or liberty interest in attending the individual school of their choice."); Thorns v. Madison Dist. Public Schools, 2007 WL 1647889 (E.D. Mich. 2007)(transfer to alternative school not implicate property interest; "A student does not have a constitutionally protected right to attend a particular school." Id. at *4.).

Finally, the Court rejects Plaintiffs' argument that KRS § 158.150(6) establishes a property interest in a right to a hearing before the Board of Education. KRS § 158.150(6) provides that "[t]he board of education of any school district may expel any pupil for misconduct as defined in subsection (1) of this section, but the action shall not be taken until the parent, guardian, or other person having legal custody or control of the pupil has had an opportunity to have a hearing before the board." KRS § 158.150(6). "[C]ourts generally agree that no property interest exists in a procedure itself, without more." United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir. 1992); Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519-520 (6th Cir. 2007)(a plaintiff cannot have a protected property interest in the procedure itself); Moulton v. Vigo County, 150 F.3d 801, 805 (7th Cir.1998)(a right to notice and a hearing before termination does not establish a property interest in a job); Garraghty v. Va., Dept. of Corrections, 52 F.3d 1274, 1284 (4th Cir.

7

1995) (rejecting plaintiff's claim to a property right in a post-termination hearing by a panel of neutral decision makers, despite provision for such a procedure in state law). Thus, the grant of a hearing under KRS 158.150(6), without more, does not create a property interest.

For these reasons, the Court concludes that neither Kentucky law nor Owensboro Board of Education Policy 09.125 related to nonresident students establishes any legitimate entitlement by nonresident students to an education in the Owensboro Public School District. Thus, G.C. III has no constitutionally cognizable property interest in attending school in the Owensboro Public School District. Accordingly, Plaintiff is not likely to succeed on his claim that his removal from school without a hearing violates the Due Process Clause.

**B. Irreparable Injury**

The next factor the Court must consider in deciding whether to grant a preliminary injunction is whether G.C. III will suffer irreparable injury absent the injunction. <u>Tenke</u>, 511 F.3d at 550. In support of the claim of irreparable injury, Plaintiffs submit the affidavit of the student's father, G.C. II, who represents that his "son is not enrolled in any school system and continues to fall behind in his schoolwork." (G.C. II Affidavit at ¶ 14.)

In considering whether G.C. III will suffer irreparable injury absent the injunction, a review of <u>Washington v. Ladue School District Board of Education</u>, 564 F. Supp. 2d 1054 (E.D. Mo. 2008) is instructive. In <u>Washington</u>, the plaintiff sued the Ladue School District for removing him as a student when the district discovered he was not residing within the district. The plaintiff filed a motion for preliminary injunction and temporary restraining order to continue to attend the Ladue School District. The district court denied the plaintiff's request for an injunction finding:

> Plaintiff has completely failed to show that he will experience irreparable harm if an injunction is not issued. Indeed, the record and arguments show that Plaintiff has free

> public education available to him wherever he resides. Nowhere has it been presented that Plaintiff has attempted to, and has been refused free public education in the district in which he actually resides. Moreover, because Plaintiff has *not* attempted to secure free public education in the district in which he actually resides, any injury Plaintiff may be experiencing is due entirely to his own actions, or inactions.

Id. at 1057-1058.

Likewise, in the present case, G.C. III has failed to demonstrate that he has suffered any irreparable injury from the termination of his nonresident student status in the Owensboro Public School District. G.C. III resides in Daviess County and can enroll as a student in his resident district. Daviess County Public School District Superintendent Tom Shelton testified by affidavit that based on the information he has been provided regarding G.C.'s removal from the Owensboro Public School District and G.C.'s residence, he has "been presented with no other information which would make GC III ineligible to attend school in the DCSD." (Tom Shelton Affidavit at ¶ 4.) Furthermore, Plaintiffs' counsel concedes that G.C. III has neither attempted to enroll in Daviess County Public Schools nor been denied admittance by the Daviess County Public School District. Because Plaintiff has failed to enroll in Daviess County Public Schools, any injury allegedly suffered by Plaintiff is due entirely to his own inaction.

## IV. Conclusion

Having found that Plaintiffs have failed to demonstrate a likelihood of success on the merits and irreparable harm, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that the motion by Plaintiffs for a preliminary injunction [DN 6] is **DENIED**.

cc: counsel of record