# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO. 4:09CV-102-JHM**

**GLENDLE CAIN III**                                                      **PLAINTIFF**

**vs.**

**OWENSBORO PUBLIC SCHOOLS, et al.**                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Owensboro Public Schools, Melissa Brown, Anita Burnette, Christina Smith, and Larry Vick, for summary judgment [DN 67] and on a motion by Plaintiff, Glendle Cain III, to schedule a Daubert Hearing on the admissibility of the Defendants' named expert Pat Guthrie [DN 66]. Fully briefed, this matter is ripe for decision.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine

factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.  It is against this standard that the Court reviews the following facts.

## II.  BACKGROUND

This case arises out of the removal of Plaintiff, Glendle Cain III (hereinafter "Cain" or "Plaintiff"), from Owensboro High School in Owensboro, Kentucky.  Owensboro High School (hereinafter "OHS") classified Cain as a resident of the Daviess County Public School District.  The Owensboro Public School District and the Daviess County Public School District have an agreement in which they allow a limited number of students to attend a school in one district while they are actually residing in the other school district.  From at least 2005 to June of 2009, Cain attended school in the Owensboro Public School District as a nonresident student pursuant to Owensboro Board of Education Policy 09.125.  This policy provides that "[t]he continued enrollment of nonresident students in the District's schools is subject to the recommendation of the school Principal and the approval of the Superintendent."  (Larry Vick Affidavit, Exhibit A.)

In February of 2008, Cain spoke with OHS Assistant Principal Christina Smith (hereinafter "Smith") about being very upset after a disagreement with his girlfriend.  Cain communicated with Smith that he didn't "want to be here anymore."  (Cain Dep. at 40-42; Christina Smith Declaration at ¶ 4.)  He also told Smith that he had a suicide plan.  Smith contacted OHS Guidance Counselor Jane Prince who joined Smith and Cain in Smith's office.  (Smith Decl. at ¶ 4.)  Cain communicated

to Smith and Prince that he felt a lot of pressure about football and school and smoked marijuana to ease the pressure.  Smith contacted Cain's parents and requested they come to school.  At that point, Smith and Prince suggested the parents take Cain to River Valley Behavioral Health for an evaluation.

In August of 2008, Cain began meeting with OHS Prevention Coordinator Summer Bell (hereinafter "Bell") who works with students regarding drug and alcohol abuse.  (Summer Bell Dep. at 8, 31-32.).  During these meetings, Bell became aware that Cain was using marijuana weekly.  (Id. at 33.)  In October of 2008, Bell sent Cain's parents a list of drug treatment facilities.  On November 17, 2008, Cain received a discipline referral for fighting and arguing in the boys' locker room.  (Burnette Dep. at 25.)  On January 6, 2009, Cain removed his cell phone from his pocket during class and his phone was taken by the classroom teacher pursuant to the OPS Code of Acceptable Behavior and Discipline (hereinafter "Behavior Code").  Cain's parents came to school to retrieve the phone pursuant to school policy.

On March 5, 2009, Cain went to see Bell in her office.  Cain told Bell he wanted to go home and she advised him that she did not have the authority to send him home.  Cain then walked out of Bell's office.  Bell followed him and observed him exit the school building.  Bell notified Assistant Principal Smith that Cain was upset and had exited the school building.  (Bell Dep. at 40-41.) Student Resource Officer Troy Couch ("SRO Couch") located Cain in the school parking lot near his vehicle talking on his cell phone.  SRO Couch observed cans of tobacco in plain view in Cain's car.  SRO Couch advised Cain that he needed to go to Smith's office.  (Smith Decl. at ¶ 7-¶ 8.)

When he arrived at her office, Smith testified that Cain was upset.  Smith informed him that because he left the building and had gone to his car, he would be searched and his cell phone would

be taken for violating the school cell phone policy. (Id.) Smith testified that because she was aware of his past behavior, she was concerned about his well being and that he might do something harmful to himself. Smith checked the text messages in Cain's cell phone for any signs that he might do something harmful to himself. According to Smith, she read a message that expressed suicidal thoughts to a girl. Smith contacted Cain's parents and suggested they have him evaluated by a mental health professional. With Cain's father's consent, SRO Couch drove Cain to River Valley. (Id. at ¶ 9.) Cain received a disciplinary referral for leaving the building without permission, using a cell phone during school hours on school property, and possession of tobacco products on school grounds. A disciplinary hearing was held with Director of Pupil Personnel David Johnson (hereinafter "Johnson"), Cain received a four days' in-school suspension. Johnson testified that he also requested a Court-Designated Worker to give Cain an evaluation through Rivendale Behavioral Services because Johnson was concerned about Cain's outbursts at school and drug use. (David Johnson Dep. at 27.) On April 8, 2009, Cain received another discipline referral for using profanity and hitting a locker. (Burnette Dep.) Cain received a three days' suspension at that time and was placed in in-school suspension for twenty days.

At the end of the 2008-2009 school year, Owensboro High School Principal Anita Burnette (hereinafter "Burnette") recommended that Cain be returned to the Daviess County Public School District because of his multiple disciplinary infractions.[1] On June 15, 2009, Owensboro Public

---

[1]The complete disciplinary history of Cain in the 2008-2009 school year reflects the following:
- November 17, 2008: Disciplinary Referral for fighting and arguing in the boys' locker room.
- January 6, 2009: Disciplinary Referral for a cell phone violation.
- March 5, 2009: Disciplinary Referral for leaving the building without permission, using cell phone during school hours on school property, and possession of

School District Superintendent Larry Vick (hereinafter "Superintendent Vick") held a meeting with Cain's parents and several school officials to discuss the student's options for attending school the next year. Despite the recommendation of Burnette, Superintendent Vick advised the parents that he was willing to give Cain one last opportunity. Superintendent Vick informed Cain's parents that there were three options: (1) Cain could attend Daviess County High School; (2) Cain and his family could physically move into the Owensboro Public School District; or (3) Cain could attend OHS as a nonresident student provided that he did not commit any further disciplinary infraction. (Dr. Larry Vick Dep. at 70-72).

On August 6, 2009, Cain's parents enrolled him in OHS and listed his address as 2205 Locust Street, his grandparents' address that is within the Owensboro Public School District. (Id. at 74-75.) The enrollment form also indicated that Cain lived with his parents. Specifically, Cain's father indicated on the line under "the guardian(s) with whom student(s) live" that Cain lived with his parents, Glendle Cain II and Billie Mohon Cain. (OHS Registration Form, Glendle Cain II Dep., Ex. 27.) Cain's father admits that he and his wife did not move to or live at 2205 Locust Street, but they continued to reside at their out-of-district address.

On September 2, 2009, Owensboro High School administrators determined that Cain violated the District's cell phone policy. Specifically, Cain's history teacher caught Cain texting on his cell phone during class. (Melissa Brown Decl. at ¶ 3.) The teacher gave Cain a warning.

---

tobacco products on school grounds.
- April 8, 2009: Disciplinary Referral for verbal aggression; given legal citation for disorderly conduct and suspended for three days.
- April 10, 2009: Disciplinary Referral for three unexcused absences.
- September 2, 2009: Disciplinary Referral for use of cell phone in class.

(Anita Burnette Depo., Exhibits 12-16.)

The teacher then caught Cain texting on his cell phone again and took the phone away from him. (Id. at ¶ 4.)  OHS Assistant Principal Melissa Brown (hereinafter "Brown") was informed that Cain was "throwing a fit" because he had his phone taken away.  Brown testified that given Cain's previous expression of suicidal thoughts, drug use, and anger issues, she checked the text messages for that day for any signs that Cain might do something harmful to himself or others. (Id. at ¶5.)

Following the infraction, Burnette recommended that Cain's out-of-district attendance privilege be revoked and he be returned to the Daviess County Public School District.  Prior to any decision by Superintendent Vick, Cain's father contacted the Director of Pupil Personnel Johnson and asked him whether Cain would be allowed to return to OHS.  (David Johnson Dep. at 53.) Johnson advised Cain's father that he was not sure and would have to ask Superintendent Vick. After being notified of the disciplinary referral, Superintendent Vick concurred with the recommendation of Burnette and directed Johnson to inform Cain's parents of the decision.  Johnson then notified the Daviess County School District that Cain would be returned to his home school district.

On October 15, 2009, Cain's parents and their attorney met with Superintendent Vick and other officials and requested that Cain be permitted to return to OHS.  At that meeting, Cain's parents asked for the reasons for his revocation. (Vick Aff. at 21.)  Superintendent Vick advised them that Cain had violated the condition of his out-of-district privilege by texting in class.  Cain's attorney stated that Cain denied doing so.   Plaintiff's request to return to OHS was denied.  Cain was not afforded a hearing before the Board of Education prior to his removal from the school because the Owensboro Public Schools classified Cain as a nonresident student.

On October 21, 2009, Cain filed a complaint for declaratory and injunctive relief pursuant

to 42 U.S.C. § 1983 alleging that the Defendants, Owensboro Public Schools, Superintendent Larry Vick, Principal Anita Burnette, Assistant Principal Melissa Brown, and Assistant Principal Christina Smith, violated his rights under the First Amendment, Fourth Amendment, and Fifth Amendment to the United States Constitution and Article II of the Kentucky Constitution.  Specifically, Plaintiff alleges that the Defendants violated his rights under the First Amendment by their unauthorized reading of Plaintiff's text messages, violated his rights under the Fourth Amendment by wrongfully searching Plaintiff's cell phone without his consent or without reasonable suspicion, and violated his due process rights under the Fifth Amendment by suspending and/or expelling him from school without the required process provided by KRS § 158.150.

On October 31, 2009, Plaintiffs filed a motion for a temporary restraining order and injunctive relief restraining the Defendant from denying the Plaintiff his right to an education and the privileges of any student enrolled at Owensboro Public Schools.  On November 13, 2009, the Court held a hearing.  At the hearing, the parties addressed the issue of whether the removal of a nonresident student from Owensboro Public Schools by the Superintendent without a formal hearing in front of the Board of Education violated the Fifth Amendment.  Specifically, Plaintiff argued that by treating in-district and out-of-district students differently, Owensboro Public School had a two-tier system for discipline which was constitutionally unacceptable.  After considering the parties' arguments and case law, the Court denied Cain's motion for a preliminary injunction finding that (1) neither Kentucky law nor Owensboro Board of Education Policy 09.125 establishes any legitimate entitlement by nonresident students to an education in the Owensboro Public School District and (2) as a result, Cain has no constitutionally cognizable property interest in attending school in the Owensboro Public School District.

7

On July 22, 2010, Magistrate E. Robert Goebel granted Plaintiff's motion to file an Amended Complaint to add an additional cause of action under Section 504 of The Rehabilitation Act. Specifically, Plaintiff alleges that the Defendants failed to identify Cain as a handicapped student qualifying for special services and protections under Section 504 of The Rehabilitation Act. (Plaintiff's First Amended Complaint ¶ 39-44.)  Defendants have now filed this current motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).

## III.  DISCUSSION

### A.  Due Process

In both his Complaint and Amended Complaint, Cain contends that the Owensboro Public School District removed him from OHS without due process of law in violation of the Fifth Amendment.  Initially, the Court notes that the Due Process Clause of the Fifth Amendment restricts only the actions of the federal government, while the Fourteenth Amendment's Due Process Clause restricts the actions of the states and their instrumentalities.  Palmer v. Town of Jonesborough, 2009 WL 1255780, *8 (E.D. Tenn. May 1, 2009)(citing  Pub. Utils. Comm'n of D.C. v. Pollak, 343 U.S. 451, 461 (1952); Bybee v. City of Paducah, 46 Fed. Appx. 735, 737 (6th Cir. 2002); Scott v. Clay County, Tenn., 205 F.3d 867, 873 n. 8 (6th Cir. 2000)).  Thus, the Court will analyze Plaintiff's Due Process claim under the Fourteenth Amendment.

The Fourteenth Amendment provides that no state shall deprive any person of life, liberty or property without due process of law. U.S. Const. amend XIV, § 1. "The Fourteenth Amendment's guarantee of procedural due process assures that the deprivation of life, liberty, or property will not be effectuated without 'notice and opportunity for hearing appropriate to the nature of the case.'" Barachkov v. 41B Dist. Court, 311 Fed. Appx. 863, 871 (6th Cir. February 20, 2009)(quoting

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation omitted)). When faced with a claim for violation of due process rights, the Court engages in a two-step analysis.  First, the interest at stake must be "a protected liberty or property interest under the Fourteenth Amendment."  Wojcik v. City of Romulus, 257 F.3d 600, 609 (6th Cir. 2001).  If such an interest exists, the court must then consider whether "the deprivation of that interest contravened the notions of due process."  Id.

In order to establish a property interest in an education in the Owensboro Public School District, Plaintiff must demonstrate that he has a "legitimate claim of entitlement" to an education in the district. Goss v. Lopez, 419 U.S. 565 (1975); Daniels v. Woodside, 396 F.3d 730, 737 (6th Cir. 2005).  Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" Daniels, 396 F.3d at 736 (quoting  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).

In Plaintiff's original pleadings with this Court, he challenged his removal as a nonresident student from Owensboro Public Schools by the Superintendent without a formal hearing in front of the Board of Education.  In fact, at the hearing on the temporary restraining order, counsel for the Defendants repeatedly mentioned that Cain's parents had lied on his 2009-2010 enrollment form listing his grandparents' in-district address, instead of their out-of-district address.  Instead of arguing to the Court at that time that Cain was entitled to due process afforded to in-district students because he was in fact an in-district student, Plaintiff argued that Cain, as a nonresident student, should be afforded the same due process as in-district students. In denying the motion for preliminary injunction, the Court found that neither Kentucky law nor Owensboro Board of

Education Policy 09.125 related to nonresident students establishes any legitimate entitlement by nonresident students to an education in the Owensboro Public School District.

Having abandoned that argument, Plaintiff now asserts that he was an in-district student residing with his grandparents in September of 2009 and, thus, could not have been removed from the Owensboro Public Schools without a hearing pursuant to Goss v. Lopez, 419 U.S. 565 (1975) and KRS § 158.150.  Specifically, in response to the Defendants' motion for summary judgment, the Plaintiff argues that in August of 2009, he enrolled in OHS as an in-district student and his status as an in-district student was not questioned.  Further, Plaintiff contends that at the time of his removal from OHS in September of 2009, there was not a nonresident contract in place between his parents and the school district.  Furthermore, Plaintiff, his parents, and his grandparents all testified that Plaintiff actually resided with his grandparents from the beginning of school until he was removed from OHS.

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court is not bound to blindly adopt a nonmoving party's version of the facts.  As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586–587 (footnote omitted). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" Scott v. Harris, 550

10

U.S. 372, 380 (2007) (quoting <u>Anderson</u>, 477 U.S. at 247–248). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u> at 380.[2]

First, the cell phone records and expert report of Lee Afflerbach submitted by Defendants in support of their motion for summary judgment belie Plaintiff's claim that he resided with his grandparents during the school week. Cain's grandfather, Glendle Wayne Cain, testified that Cain's curfew was 11:00 p.m. on school nights and 12:00 p.m. on weekend nights during the period Cain allegedly resided with his grandparents.  (Glendle Wayne Cain Dep. at 17.)   Lee Afflerbach, a telecommunications engineer with forty years experience in telephone and wireless technologies, stated that during the period of August 6 to September 4, 2009, the period in which Cain testified that he lived with his grandparents, there were 22 calls made from Cain's cell phone between midnight and 7:30 a.m.  (Lee Afflerbach Report.)  Of those calls, 21 calls were serviced through the cell phone tower that routes calls in the geographic location of Cain's parents' home at 3003 Silks Cove, not the tower that services the geographic area of Cain's grandparents.  Cain does not dispute the validity or significance of the cell phone records.  In fact, Cain does not even attempt to address or explain the cell phone records.

---

[2] <u>See also</u> <u>Coble v. City of White House, Tenn.</u>, 634 F.3d 865, 869 (6th Cir. 2011); <u>White v. Georgia</u>, 380 Fed. Appx. 796, 798 (11th Cir. 2010); <u>Carter v. City of Wyoming</u>, 294 Fed. Appx. 990, 992 (6th Cir. 2008); <u>Cooper v. City of Rockford</u>, 2010 WL 3034181, *2 n. 3 (N.D. Ill. Aug. 3, 2010); <u>Mulcahy v. Tennessee Valley Authority</u>, 2010 WL 1417794, *6 (W.D. Ky. March 31, 2010); <u>Shreve v. Jessamine County Fiscal Ct.</u>, 453 F.3d 681, 688 (6th Cir. 2006) (suggesting, before <u>Scott</u> was decided, that it would be proper to discount the plaintiff's evidence where the defendants' evidence was "so objectively compelling" that no reasonable juror could believe the plaintiff).

Second, the August 6, 2009, enrollment form for OHS in which Cain parents listed Cain's address as his grandparents' in-district address also indicates that Cain lived with his parents. Specifically, Cain's father indicated on the line under "the guardian(s) with whom student(s) live" that Cain lived with his parents, Glendle Cain II and Billie Mohon Cain.  (OHS Registration Form, Glendle Cain II Dep., Ex. 27.)  However, in his deposition, Cain's father admitted that he and his wife did not move to or live at an in-district address, but they continued to reside at their out-of-district address.  Additionally, his parents' neighbors indicated that they observed Cain's vehicle at his parents in the early morning hours in the month of August.  (Regina Paulette Moredock Aff.; Nancy Crowe Aff.; Christina Morris Smith Aff.)   Likewise, neighbors of Cain's grandparents testified that they never saw Cain's vehicle at his grandparents home during that same time period. (Stewart Coomes Aff. and Bill McKinney Aff.)  Plaintiff failed to address either his parents' statement in the enrollment form or the affidavits submitted from the neighbors.[3]

Third, Cain testified at his deposition that he "wasn't expelled from O-H-S."  (Cain Dep. at 140.)  In fact, in enrolling in Mainland High School in Daytona Beach, Florida, in the fall of 2010, Cain and his father indicated that he had never been expelled or suspended from any previous school.  (Id. at 140.)  These statements completely contradict Plaintiff's current argument that he was expelled from OHS in September of 2009.

In light of the  uncontroverted cell phone records, along with the enrollment forms filled out by Plaintiff and his father at OHS and Mainland High School, the Court finds that Plaintiff's

---

[3] Cain also testified in his deposition that when he moved to his grandparent's home, he filed a change of address form with the United States Postal Service. (Cain Dep. at 71, 73, 118-119).  However, later in his deposition, Cain admitted to lying under oath about filing a change of address form. (Id. at 136-137.)

evidence regarding his residence during the time period in question is "blatantly contradicted by the record" such that no reasonable jury could find in favor of the Plaintiff on this issue. Scott, 550 U.S. at 380.  Thus, the Court finds no genuine dispute exists with respect to Plaintiff's residency.

Given Cain's status as an nonresident student, he had no constitutionally cognizable property interest in attending school in the Owensboro Public School District.   While Kentucky law clearly provides a property interest in a free public education, see Goss v. Lopez, 419 U.S. 565 (1975); Laney v. Farley, 501 F.3d 577, 581 (6th Cir. 2007), this property interest extends to only those students that reside within a school district. See KRS § 159.010.  Because Cain attended Owensboro High School at the unfettered discretion of the Superintendent and because he did not reside in that School District, Cain did not have a property interest in an education within the Owensboro Public School District.  See Daniels, 396 F.3d 730; Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1359 (6th Cir. 1996); Mullen v. Thompson, 31 Fed. Appx. 77 (3d Cir. 2002); Thorns v. Madison Dist. Public Schools, 2007 WL 1647889 (E.D. Mich. June 5, 2007).[4]  Accordingly, Cain's removal from school without a hearing did not violate the Due Process Clause. The Court grants summary judgment in favor of the Defendants on Cain's Fourteenth Amendment Due Process claim.

**B. Fourth Amendment**

Cain claims that the Defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures when his text messages were read by school officials on March

---

[4]In as much as Plaintiff cites OAG 79-327 in support of his previous position that the termination of a nonresident student's privilege to attend school in another district should be treated like an expulsion and accompanied by a hearing, the Court declines to adopt the reasoning of that opinion.  Attorney General Opinions do not serve as binding precedent for this Court.  See Sturgill v. Boyd Fiscal Court, 2005 WL 736600, *6 (Ky. Ct.  App. April 1, 2005). Furthermore, the Attorney General Opinion appears to conflict with existing case law.

5, 2009 and September 2, 2009.  Cain argues that the reasons offered by the Defendants for the search of his cell phone do not rise to the required level of "reasonable suspicion" set forth by the United States Supreme Court in New Jersey v. T.L.O., 469 U.S. 325 (1985).

The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. While the Fourth Amendment applies to searches conducted by school authorities, the United States Supreme Court determined that "the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause." New Jersey v. T.L.O., 469 U.S. 325, 341 (1985).   Instead, the legality of a search of a student under the Fourth Amendment depends on the reasonableness of the search given all of the circumstances. Knisley v. Pike County Joint Vocational School Dist., 604 F.3d 977, 979 (6th Cir. 2010) (citing T.L.O., 469 U.S. at 341).  " Determining the reasonableness of a school search involves a two-part inquiry: (1) was the search justified at its inception, and (2) was the search reasonably related in scope to the circumstances justifying the search." Id. (citing Beard, 402 F.3d at 603-04). The Supreme Court has held that:

> Under ordinary circumstances, a search of a student by a teacher or other school official will be "justified at its inception" when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.  Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

T.L.O., 469 U.S. at 341-42 (footnotes omitted).  See also Brannum v. Overton County School Bd., 516 F.3d 489, 495-96 (6th Cir. 2008)(search is justified in its inception where there are reasonable grounds for suspecting that the student is in imminent danger of injury on school premises); Safford

14

Unified School District No. 1 v. Redding, 129 S.Ct. 2633, 2639 (2009)("The lesser standard for school searches could as readily be described as a moderate chance of finding evidence of wrongdoing.")[5]

First, contrary to Plaintiff's contention, the searches and seizures in question were justified at their inception.  On March 5, 2009, Cain left the school building without permission indicating that he was upset and wanted to go home.  When located by SRO Couch, Cain was *using* his cell phone in violation of the Behavior Code[6] near his car in the parking lot.  Cain had a history of disciplinary problems at the school.  Additionally, school officials were aware that Cain previously communicated thoughts of suicide to Assistant Principal Smith and that Cain regularly used drugs. Considering Cain's cell phone violation and his unauthorized leaving of the school building in light

---

[5]  Consistent with this case law, the OPS Code of Acceptable Behavior and Discipline also provides:

**Student Search & Seizure**

Although students have the right to freedom from unreasonable search and seizure, school officials have the right, under the law, to search students or their property when there is a reasonable suspicion they have something that violates school rules or endangers others.  Searches may include the student, his/her locker, desk, automobile, cell phone or other personal belongings.  The Police Detection Canine Team may conduct random and unannounced searches of general school areas, including school lockers and parking lots.  A school official having reasonable suspicion that the student is in possession of a weapon may use a hand-held metal detector.

(Behavior Code at 19.)

[6]  The OPS Code of Acceptable Behavior and Discipline provides in relevant part:
**Possession of Telecommunication Devices Prohibited**
Under state law (KRS 158.165), a student in the Owensboro Public School District may not activate a telecommunications device on school property or while at a school-related activity or school sponsored activity during their regular school hours unless he/she is acting in the capacity of a volunteer fire fighter or emergency medical service worker.

(Behavior Code at 21.)

15

of his previous disciplinary history, drug use, and expressions of suicidal thoughts, reasonable grounds existed for suspecting that the search of the cell phone texts for March 5, 2009, would produce evidence that the student was violating either the law or the rules of the school or might do something to harm himself or others.  "Upon witnessing a student improperly using a cell phone at school, it strikes this court as being reasonable for a school official to seek to determine to what end the student was improperly using that phone."  J.W. v. Desoto County School District, 2010 WL 4394059, *5 (N.D. Miss. Nov. 1, 2010)("[A] student's decision to violate school rules by bringing contraband on campus and using that contraband within view of teachers appropriately results in a diminished privacy expectation in that contraband.")

The September 2, 2009, search of Cain's cell phone by Assistant Principal Melissa Brown was likewise supported by reasonable suspicion.  Significantly, Assistant Principal Brown knew that despite repeated warning Cain had once again violated the Behavior Code by texting in class and Cain was "throwing a fit" because his phone had been taken.  Additionally, Brown was aware that Plaintiff had a history of significant disciplinary problems at the school, including fighting, and was at risk from being removed from the school.  As discussed above, school officials, including Brown, were also aware that Cain previously communicated thoughts of suicide to school officials and that he regularly used drugs.  Furthermore, the record reflects that school officials were aware that OHS Prevention Counselor Summer Bell had sent home a list of drug treatment facilities to Cain's parents and that River Valley had recommended he be admitted for treatment, but Cain's parents had declined treatment.  Witnessing the student improperly *using* a cell phone in violation of the Behavior Code, coupled with the above information, supplied reasonable suspicion for school officials to read the September 2, 2009, text messages of Cain.

16

Second, the Court finds that both the searches as conducted were reasonably related in scope to the circumstances justifying each search.  <u>Knisley</u>, 604 F.3d at 979 (citing <u>T.L.O.</u>, 469 U.S. at 341).  School officials did not search Cain's entire cell phone, but only read the text messages on the day the cell phone was taken.  These limited searches of the cell phone were no more intrusive than necessary to accomplish its purpose or objective in determining whether Cain was a danger to himself or others or whether Cain was violating either the law or the rules of the school.  <u>T.L.O.</u>, 469 U.S. at 341-42.  Thus, the searches in question were reasonable in scope.

For these reasons, the Court concludes that Plaintiff failed to produce evidence establishing that he suffered a violation of his Fourth Amendment rights by the limited search of his cell phone on two occasions by school officials.  Accordingly, the Court grants summary judgment in favor of the Defendants on Plaintiff's Fourth Amendment claim.

### C.  First Amendment

Plaintiff claims that the Defendants violated his First Amendment right to free speech by the unauthorized reading of the Plaintiff's text messages to other individuals.  (Amended Complaint at ¶ 25.)  Specifically, Plaintiff argues that his First Amendment rights were violated when school officials searched his cell phone on March 5, 2009 and September 2, 2009, and then punished him "for the content of his speech on the text of his cell phone" and "for communicating with his friends outside of school and planning out of school activities."  (Plaintiff's Response to the Motion for Summary Judgment at 13.)  Additionally, Plaintiff argues that as a result of the March 5, 2009, text that was read by school officials, he was removed from the school and "ordered to be evaluated by mental health professionals at River Valley Behavior Health" in violation of the First Amendment. (<u>Id.</u> at 12.)

17

In <u>Tinker v. Des Moines Independent Community School Dist.</u>, the Supreme Court made clear that "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students." 393 U.S. 503, 506 (1969).  "[I]t is well-established that students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" <u>Defoe ex rel. Defoe v. Spiva</u>, 625 F.3d 324, 331 (6th Cir. 2010)(quoting <u>Tinker</u>, 393 U.S. at 506).  "Nonetheless, school officials retain some 'authority . . . consistent with fundamental constitutional safeguards to prescribe and control conduct in the schools.'" <u>Id.</u> (quoting <u>Tinker</u>, 393 U.S. at 507).  As recognized by the Supreme Court, "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," and the Constitution does not compel "school officials to surrender control of the American public school system to public school students."  <u>Bethel School Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 682, 686 (1986).  "Students' First Amendment rights must be 'applied in light of the special characteristics of the school environment.'" <u>Defoe</u>, 625 F.3d at 331(quoting <u>Tinker</u>, 393 U.S. at 506).

Cain has failed to offer any evidence or authority in support of his claim against the Defendants for a violation of the First Amendment.  Plaintiff offers no authority that a high school student has a First Amendment right to use a cell phone at school during the school day or that a school district violates a student's First Amendment rights by a limited reading of cell phone text messages under the circumstances present in this case.  Furthermore, the record reflects that Cain was not punished for the content of any of his text messages.  Cain was issued disciplinary referrals for *using* his cell phone on school grounds during school hours in violation of the OPS Behavior Code.  Specifically, the OPS Behavior Code provides in relevant part that "[u]nder state law (KRS

158.165), a student in the Owensboro Public School District may not activate a telecommunications device on school property or while at a school-related activity or school sponsored activity during their regular school hours unless he/she is acting in the capacity of a volunteer fire fighter or emergency medical service worker."  (Behavior Code at 21.)  Thus, Cain's nonresident privileges were revoked not as a result of the content of his September 2, 2009, text messages, but because he received another disciplinary referral.  For these reasons, the Court grants Defendants motion for summary judgment on Plaintiff's claim under the First Amendment.

### D. Rehabilitation Act

Plaintiff alleges that the Owensboro Public Schools failed to identify him as a handicapped student qualifying for special services and protections under Section 504 of The Rehabilitation Act of 1973.  (Plaintiff's First Amended Complaint ¶ 39-44.)   Defendants have moved for summary judgment on this claim relying in part upon the expert opinion of Pat Guthrie (hereinafter "Guthrie"), former Warren County Schools Superintendent for Student Services and a certified school psychologist.  Guthrie reviewed the depositions in the case and Cain's medical records and concluded that OHS had no reason to suspect the presence of any disability that would have qualified Cain for any services pursuant to Section 504 of the Rehabilitation Act.

### 1. Motion to Exclude the Expert Opinion of Pat Guthrie

The Plaintiff seeks to exclude the testimony and opinions of Guthrie on grounds that her opinions do not satisfy the standards of <u>Daubert v. Merrell Dow Pharm., Inc.,</u> 509 U.S. 579 (1993) and/or Fed. R. Evid. 702.  Plaintiff also requests a hearing.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient

facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant.  Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)).  In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.  In Daubert, the Supreme Court identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94.  This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. Kumho Tire, 526 U.S. at 147-48.

Plaintiff argues that Guthrie's opinions should be excluded because she is not qualified to render opinions regarding whether the Owensboro Public Schools should have referred Plaintiff for services under Section 504 of the Rehabilitation Act of 1973.  Specifically, Plaintiff suggests that Guthrie lacks the credentials necessary to render an opinion in the present case and that her opinions are based only on subjective beliefs and unsupported allegations.

Having reviewed Guthrie's deposition testimony, her expert report, and her curriculum vitae, the Court concludes that her testimony satisfies the standard of Fed. R. Evid. 702.  With respect to her qualifications, Guthrie is a graduate of Vanderbilt's Peabody College and completed her

20

Master's and Education Specialist Degrees at Western Kentucky University. She is a nationally certified school psychologist and guidance counselor, served as an adjunct professor at Western, served as a Section 504 hearing officer and an IDEA due process hearing officer, provides Section 504 training for school districts in Kentucky, co-author a publication interpreting Section 504, and is a member of the National Association for School Psychologists and the National Council of Administrators of Special Education. She currently works as a consultant for the Office of Special Education Programs in Washington, D.C. The record reflects that given her academic training and her experience as a Section 504 hearing officer, school counselor, and psychologist, she is certainly qualified to offer opinions related to the identification by school administrators and staff of students who qualify for special services under Section 504 of the Rehabilitation Act and the procedures the school administrators follow when a student is identified for such a referral. The two portions of Guthrie's deposition cited by Plaintiff in support of his argument that Guthrie lacks the credentials to testify as an expert in Section 504 matters are taken out of context and do not support his motion. Furthermore, Plaintiff has offered no authority that Guthrie's opinions are flawed or unreliable.

Accordingly, Defendant's motion to exclude the expert opinion of Pat Guthrie and for a hearing on this matter is denied.

### 2. Rehabilitation Act Claim

Plaintiff claims that Owensboro Public Schools failed to fulfill its obligation to Plaintiff under the child find provision of Section 504 of the Rehabilitation Act by failing to test and identify Cain as a student with a disability. Plaintiff alleges that school officials were aware of his anxiety and anger issues and this conduct should have prompted the school to identify and evaluate Cain for a disability. Section 504 of the Rehabilitation Act of 1973 provides as follows:

21

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  Therefore, Section 504 applies to all public elementary and secondary education programs that receive federal funds.  29 U.S.C. § 794(b)(20)(B).  "The federal regulations implementing [S]ection 504 (34 C.F.R. Part 104) require that students with disabilities have equal access to public schools and that they receive a 'free appropriate public education' (FAPE) regardless of the nature or severity of their disabilities." B.H. v. Portage Public School Bd. of Educ., 2009 WL 277051, *6 (W.D. Mich. Feb. 2, 2009)(quoting 34 C.F.R. § 104.33).  "Under the regulations, a school district has an affirmative duty to identify, locate, and evaluate all children with disabilities. 34 C.F.R. §§ 104.32, [104.35]. This duty is often referred to as the 'child find' obligation." Id.

The elements of a cause of action under Section 504 are as follows: (1) The plaintiff has a "disability" under the Act; "(2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance." Campbell v. Board of Education of the Centerline School District, 58 Fed. Appx. 162, 165 (6th Cir. 2003)(quoting Doherty v. Southern College of Optometry, 862 F.2d 570, 573 (6th Cir. 1988)); see also D.A. v. Houston Independent School District, 716 F. Supp. 2d 603, 618 (S.D. Tex. 2009).  To be "disabled" under the Rehabilitation Act, a student must have a physical or mental impairment that substantially limits one or more of life activities, have a record of such impairment, or be regarded as having such an

impairment. 29 U.S.C. § 794; 29 U.S.C. § 705(20)(B); 34 C.F.R. § 104.3(j).  The Rehabilitation Act provides that the term "'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use."  29 U.S.C. § 705(20)(C)(i).  Based on review of the record and case law, the Court finds Plaintiff has failed to establish a violation of Section 504 of the Rehabilitation Act.

First, the evidence does not support Plaintiff's claim that the Owensboro Public Schools failed to comply with its child find obligations with respect to Cain.  Cain was a student who had demonstrated anger and behavioral issues.  Cain had self-reported to both Assistant Principal Christina Smith and Prevention Coordinator Summer Bell that he illegally used drugs.  Neither Smith nor Bell considered that Cain was in need of special education services.  Instead, school officials believed that Cain's inappropriate behavior at school was a direct result of his admitted drug use.  (Bell Dep. at 29.)  In fact, school officials repeatedly referred Cain to organizations that specialize in the treatment of drug abuse.

Defendant's expert Pat Guthrie opined that considering the information available to school officials, the Owensboro Public Schools had no basis for referring Cain for services under Section 504.  Guthrie concluded that there was no evidence of a need for special education and related services.  "Concerns were instead appropriately related to [Cain's] self-reported illegal drug use/abuse and continuing disciplinary issues." (Patricia Guthrie Expert Report at 7.)  As noted by Guthrie, Section 504 of the Rehabilitation Act "specifically excludes protections to students engaged in illegal drug use when there is no evidence of any other handicapping condition."[7]  (Id.)

_____

[7]  See 29 U.S.C. § 705(20)(C)(i)("the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use."); Nielsen v. Moroni Feed Co., 162 F.3d 604, 609 (10th Cir.1998) (recognizing that unsatisfactory conduct "caused by alcoholism and illegal drug use does not

Second, even if the Court were to conclude that Owensboro Public Schools failed to satisfy the child find requirements of the Rehabilitation Act, summary judgment would still be appropriate. To bring an action under the Rehabilitation Act against a school for failing to provide adequate services to a child with a disability, a plaintiff must allege facts supporting a claim that the school acted with "bad faith or gross misjudgment." Campbell, 58 Fed. Appx. at 167(quoting Monahan v. State of Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982)).  As one court has stated, the ADA and Section 504 "do not create general tort liability for educational malpractice."  Smith ex. rel. Townsend v. Special Sch. Dist. No. 1, 184 F.3d 764, 769 (8th Cir.1999).  See J.D. v. Georgetown Independent School Dist., 2011 WL 2971284, *7 (W.D. Tex. July 21, 2011).  "So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under Section 504."  Monahan, 687 F.2d at 1171.

Plaintiff has failed to set forth any evidence that the Defendants "depart[ed] grossly from accepted standards among educational professionals," and therefore, summary judgment is proper. Id.  Here, Plaintiff argues that school officials failed to notice signs of Plaintiff's alleged disability which would have required the school district to undertake an evaluation and potentially provide services pursuant to Section § 504.   Failure to timely assess and diagnose a student's disability alone is not evidence of bad faith or gross misjudgment.  See Sellers by Sellers v. School Bd. of City of Mannassas, Va., 141 F.3d 524, 529 (4th Cir. 1998) ("In similar cases involving allegations of a school district's failure to 'timely assess and diagnose' a child's disability, courts have been

<hr />

receive protection under the ADA or the Rehabilitation Act"); Daniels v. City of Tampa, 2010 WL 1837796, *2 (M.D. Fla. April 12, 2010)( "The term 'individual with a disability' expressly excludes 'an individual who is currently engaging in the illegal use of drugs' under both the ADA and the Rehabilitation Act.").

reluctant to find in mis-diagnoses the evidence of bad faith or gross misjudgment" sufficient to support a claim under section 504.)  At most, it constitutes negligence or "educational malpractice."  Furthermore, Pat Guthrie opined that, considering the information available to school officials, the Owensboro Public Schools had no basis for referring Cain for an evaluation for services under Section 504.  Accordingly, absent evidence of bad faith or gross misjudgment, summary judgment in favor the Defendants is likewise proper.[8]

### E.  State Law Claims

Having dismissed the Plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("[I]f the federal claims are dismissed before trial ... the state claims should be dismissed as well." Id. at 726.). Therefore, Plaintiff's pendent state law claims are dismissed without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants, Owensboro Public Schools, Melissa Brown, Anita Burnette, Christina Smith, and Larry Vick, for summary judgment [DN 67] is **GRANTED** and the motion by Plaintiff, Glendle Cain, III, to exclude Defendants' expert, Pat Guthrie, and to schedule a Daubert Hearing [DN 66] is **DENIED**.  The Court will enter a Judgment consistent with this Opinion.

cc: counsel of record

---

[8] In as much as Plaintiff alleges a claim under the Rehabilitation Act for the failure of the school to protect Cain from peer-on-peer harassment, Defendants also moved for summary judgment on this claim.  Because Plaintiff failed to put forth evidence in support of such a claim, summary judgment is granted on this claim as well.